#### IN THE UNITED STATES DISTRICT COURT
#### EASTERN DISTRICT OF ARKANSAS
#### PINE BLUFF DIVISION

JESSE R. FURR,
ADC #096099                                                                                           PLAINTIFF

V.                            CASE NO. 5:16-CV-292-SWW-BD

WENDY KELLEY, et al.                                                                           DEFENDANTS

### RECOMMENDED DISPOSITION

**I.     Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Judge Susan Webber Wright. Any party may file written objections to this Recommendation. Objections must be specific and must include the factual or legal basis for the objection. To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation.

If no objections are filed, Judge Wright can adopt this Recommendation without independently reviewing the record. By not objecting, you may also waive any right to appeal questions of fact.

**II.    Discussion:**

    A.    Background

Plaintiff Jesse Furr, an Arkansas Department of Correction ("ADC") inmate, filed this case without the help of a lawyer under 42 U.S.C. § 1983. He claims that ADC employees violated his rights guaranteed by the First Amendment's Free Exercise Clause, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the

Fourteenth Amendment's Equal Protection Clause by burdening his ability to practice his Native American religion. (Docket entry #2)

Defendants have filed a motion for summary judgment. (#29) Mr. Furr has responded. (#37, #38)

B.   Standard

Summary judgment is granted to a party when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any fact important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). As the moving parties, the Defendants must present evidence showing that there is no real dispute as to any material fact. *Celotex Corp.,* 477 U.S. at 323. If they meet this burden, Mr. Furr must come forward with evidence showing of a genuine dispute that must be decided at a trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If he fails to come forward with evidence to contest the Defendants' evidence, the Defendants are entitled to summary judgment. *Celotex Corp.*, 447 U.S. at 322-23.

C.   Facts

The undisputed facts show that Mr. Furr sought a religious accommodation of his

Native American religious beliefs[1] in 2015, specifically for permission to let his hair and beard grow. (#29-10) That request was granted. (#29-10) In 2015, Mr. Furr also petitioned the ADC for Native American religious services, but he says, he did not receive a response. (#2)

In 2016, Mr. Furr began seeking items he needed to practice his Native American religion; specifically, a Native American spiritual advisor ("advisor"), and the use of a sweat lodge. (#29-24, p.38)

On July 11, 2016, Mr. Furr filed grievance VU-16-796, complaining that ADC officials at the Varner Unit had refused to provide the essentials for him to practice of his Native American religion. (#29-2) Specifically, he sought access to an eagle feather, a ceremonial headdress, an advisor, a ceremonial pipe, tobacco, and a sweat lodge. (#29-2) In response to the grievance, the warden, Defendant Watson, noted that the chaplain, Defendant Mayfield, had already advised Mr. Furr that the accommodations he sought would create an undue burden on the ADC and threaten security. (#29-2) Mr. Furr appealed the decision. The deputy director affirmed Defendant Watson's decision and found Mr. Furr's appeal to be without merit on August 25, 2016. (#29-2)

On September 19, 2016, Mr. Furr filed this lawsuit against ADC Director Kelley, Defendant Watson as the warden of the Varner Unit, and Defendant Mayfield as the

---

[1] Mr. Furr declared that he was a member of the Native American religion in 2006 while he was at the Tucker Unit. (#29-24, p.26, 38)

3

chaplain of the Varner Unit. (#2, p.5) According to Mr. Furr, his Native American religion requires the use of an eagle feather, a ceremonial headdress, an advisor, a ceremonial pipe, tobacco, and a sweat lodge. (#2)

In this case, Mr. Furr seeks: a declaratory judgment that Defendants violated the Free Exercise Clause of the First Amendment, his rights under RLUIPA, and the Equal Protection Clause of the Fourteenth Amendment; injunctive relief ordering the Defendants to provide him with all the Native American religion necessities; compensatory damages; and punitive damages. (#2)

D. Official Capacity Claims for Money Damages

A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, Mr. Furr's official capacity claims for money damages must be dismissed.

E. Personal Capacity Claims for Money Damages

Defendants argue that they are entitled to qualified immunity regarding Mr. Furr's personal-capacity claims for money damages. In determining qualified immunity, the Court must decide whether the facts as alleged, viewed in a light most favorable to Mr. Furr, establish the violation of a federally protected right. *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014). If the facts do not add up to a violation, the Defendants obviously prevail.

But even if there was a violation, the Defendants still prevail if the constitutional right at issue was not "clearly established" at the time of the incident. The critical question in determining whether a right was "clearly established" at the time of the incident turns on whether a reasonable official would have known that his or her actions were unlawful. *Id*. If the answer is "no," the Defendants are entitled to qualified immunity.

The First Amendment provides that, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The Free Exercise Clause prohibits government action that infringes the practice of a sincerely held religious belief. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993); *Munson v. Norris*, 435 F.3d 877, 880 (8th Cir. 2006). Prison regulations that allegedly infringe on constitutional rights are judged under a "reasonableness" test. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). That is, "when a prison regulation impinges on an inmates' constitutional rights, the regulation is valid if it is reasonably related to a legitimate penological interest." *Id*. (quoting *Turner v. Safley*, 482 U.S. 78, 81 (1987)).

In applying *Turner*, courts employ a four-factor test. *Turner*, 482 U.S. at 81. Courts must consider: (1) whether there is a "valid rational connection" between the prison regulation and the government interest justifying it; (2) whether there is an alternative means available to the prison inmates to exercise the right; (3) what impact an

accommodation would have on the guards, other inmates, and prison resources; and (4) whether there is an alternative that fully accommodates the prisoner "at *de minimis* cost to valid penological interests." *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982-83 (8th Cir. 2004) (quoting *Turner*, 482 U.S. at 89-91). A prisoner does not have to be afforded his preferred method of practicing his religion so long as he is afforded a sufficient means to practice. *Id*.

Under RLUIPA, on the other hand, prisons are held to a higher standard of review than under the First Amendment. RLUIPA provides that, "[n]o government shall impose a substantial burden on the religious exercise" of an institutionalized person unless the government can demonstrate that the burden "is the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005).

Mr. Furr has the burden of showing that the ADC policy places a "substantial burden" on his ability to practice his religion. *Holt v. Hobbs*, 135 S.Ct. 853, 862 (2015). In this context, substantial burdens:

> significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008); *Murphy*, 372 F.3d at

988 (quoting *Wir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997)).

Once he meets this burden, the government must demonstrate that its policy is the least restrictive means to further a compelling government interest. *Weir*, 114 F.3d at 820.

Finally, to prevail on an equal protection claim under the Fourteenth Amendment, a prisoner must demonstrate that defendants intentionally treated him differently from other, similarly situated prisoners; and that there was no rational basis for the difference in treatment. *Nolan v. Thompson*, 521 F.3d 983, 990 (8th Cir. 2008); *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003). To survive summary judgment, however, Mr. Furr must "identify the characteristics of the class he claims to be similarly situated to and present some evidence that other groups with the class were not also restricted in similar ways." *Murphy*, 372 F.3d at 984. If there is no evidence offered that valid prison restrictions were unequally applied, then summary judgment must be granted. *Id.*

1. Eagle Feather and Ceremonial Headdress

As a matter of policy, the ADC does not purchase religious items for any inmates. (#29-3, p.3) The ADC allows inmates to purchase or receive donated religious articles, as long as the possession or use of those items does not violate ADC policy. (#29-4) Inmates are permitted to purchase and receive both eagle feathers and a ceremonial headdresses for religious purposes. (#29-5, p.4) In fact, Mr. Furr purchased an eagle feather, which he has in his possession. (#29-24, p.52) Mr. Furr has never attempted to purchase a

ceremonial headdress and concedes that he has never asked his family to donate one. (#29-24, p.50-51)

To the extent that Mr. Furr argues that Defendants should have provided these items for him, he is wrong. Neither the First Amendment nor RLUIPA requires a state to pay for an inmate's devotional accessories. *Cutter*, 544 U.S. at 720 n.8 (citing *Charles v. Veghagen*, 348 F3d 601, 605 (7th Cir. 2003)); *Frank v. Terrell*, 858 F.2d 1090, 1091 (5th Cir. 1988)(quoting *Cruz v. Beto*, 405 U.S. 319, 321 (1972)(the refusal to provide religious articles is well within "the latitude in the administration of prison affairs").

Mr. Furr has not alleged that Defendants have purchased items for inmates who practice other religions or that they have treated him differently from other, similarly situated inmates with regard to purchasing religious items.

Mr. Furr has not come forward with any evidence to show that Defendants violated his First Amendment, RLUIPA, or Fourteenth Amendment rights with regards to the purchase and possession an eagle feather and a ceremonial headdress, and Defendants are entitled to qualified immunity on this issue.

    2. Advisor

It is undisputed that Mr. Furr, as an inmate, is entitled to have a religious advisor. Billy Fletcher, an inmate who also practices the Native American religion has filed a declaration in support of the Defendants' motion. Mr. Fletcher declares that he is familiar with fundamental Native American traditions and explains the role of an advisor, also

referred to as trained medicine carriers, Medicine Men, priests, and tribal elders, in the Native American religion:

> [O]nly qualified and trained medicine carries (Medicine Men) and priests should lead Native American religious services. Becoming qualified requires intensive training of tribal history and customs and only those properly trained should be involved with leading ceremonial services. . . .
>
> Medicine men, and tribal elders also perform ceremonial pipe services with and without tobacco as a part of the Native American customs. These are not rituals that can be practiced alone by an untrained person such as myself. These ceremonies are meant to be led by a tribal leader for the benefit of the participants.
>
> Incarcerated Native Americans who have not been qualified as medicine men or priests should not lead religious ceremonies.

(#29-6, Declaration of Billy Fletcher)

The ADC does not currently have a staff member or volunteer to act as an advisor for inmates who practice the Native American religion. (#29-3, p.4, #29-5, p.4) Furthermore, Mr. Furr has been unable to locate an individual to serve as an advisor to him. (#29-24, p.35) Mr. Furr began searching for an advisor in 2015 by writing to the Native American Indians Inmate Support Project. (#29-24, p.27) He has written nearly fifty letters to different people and groups trying to locate an advisor. (#29-24, p.42) Mr. Furr reached out to chaplains Yancy and Wheeler (not named Defendants) seeking help in finding an advisor. (#29-24, p.30, 33) Defendant Mayfield, administrator of chaplaincy service for the ADC, tried to find an advisor for Native American inmates by contacting

the Native American tribal group. (#29-3) Chaplain services have not been able to find anyone willing to be an advisor for Native American inmates. (#29-3, #29-24, p.37) In fact, during the tenure of the Defendants, no person has ever been identified who would volunteer to serve as an advisor to Native American inmates. (#29-3, #29-4, #29-5)

The United States Supreme Court has recognized that prisons are not required to provide advisors or clergy for every religion, denomination, or sect that exists; rather, their obligation is to provide a reasonable opportunity for prisoners to exercise their religion. *Cruz*, 405 U.S. at 322. Likewise, the Eighth Circuit has held that "[t]he Constitution does not require that a religious advisor be provided for every sect represented in a penitentiary." *Blair-Bey v. Nix*, 963 F.2d 162, 163 (8th Cir. 1992).

The ADC officials have not prevented Mr. Furr from locating an advisor. In fact, they have tried, albeit unsuccessfully, to locate an advisor for Native American inmates. Other inmates who practice the Native American religion have also tried unsuccessfully to locate an advisor. Mr. Furr admits that he has tried, unsuccessfully, to locate an advisor.

Having established that the Defendants are under no legal obligation to provide an advisor for inmates who practice the Native American religion, it is undisputed that, without an advisor, Mr. Furr cannot participate in a sweat lodge ceremony or use a ceremonial pipe and tobacco. And, while this affects his ability to participate in some religious activities, Mr. Furr is provided a reasonable opportunity to exercise his religion.

For example, Mr. Furr is free to purchase, receive, and possess allowable religious items. All inmates are allowed to have religious texts and other religious literature that do not raise security concerns. In fact, Mr. Furr has in his possession an arrowhead necklace, a sacred text, religious books and publications, and an eagle feather. Mr. Furr's family has purchased religious texts for him, and the ADC has never rejected even one of Mr. Furr's requests for a religious publication.

Mr. Furr also has the ability to pray. He explains that he needs to be outside the walls of the prison to pray, yet he has never requested an opportunity to pray outside; nor has he used his yard-call time for religious purposes. Finally, Mr. Furr was granted an accommodation to grow his hair for religious reasons.

Defendants did not violate Mr. Furr's First Amendment rights by failing to provide him with an advisor. Clearly, Mr. Furr has been provided a reasonable opportunity to practice his religion.

The Eighth Circuit has not addressed a prisoner's right to an advisor under RLUIPA. The Fifth Circuit, however, has held that a requirement to have an advisor for religious services does not substantially burden an inmate's religious exercise under RLUIPA. *Adkins v. Kaspar*, 393 F.3d 559, 571 (5th Cir. 2004). In *Adkins*, the inmate had no access to an advisor, but not because of some rule or regulation. Instead, there was a "dearth of qualified outside volunteers available."[2] *Id.*

---

[2] The Fifth Circuit applies a different definition for what constitutes a substantial burden

11

As in *Adkins*, a lack of available volunteers is the reason Mr. Furr does not have an advisor. Here, it is not ADC policy, but the religion itself, that requires an advisor to lead Native American religious services. The Defendants' actions did not create any burden Mr. Furr experienced; rather, it is the requirement of his Native American religion for a properly trained advisor. Because the religion requires an advisor and because of the lack of available volunteers, Mr. Furr's religious practices are somewhat curtailed. Defendants have not violated Mr. Furr's rights under RLUIPA.

Nor is there a violation under the Fourteenth Amendment. Mr. Furr has not alleged that the Defendants treated him differently from other, similarly situated inmates with regard to locating an advisor. Mr. Furr makes an argument that other religions are allowed to have inmates lead their services. Here, however, Mr. Furr has not come forward with evidence to show that there is a properly trained inmate to serve as an advisor.

Mr. Furr's allegations that the ADC has violated his rights by not providing him an advisor fail to state a claim under either the First Amendment, RLUIPA, or the Fourteenth Amendment. The Defendants are entitled to qualified immunity.

### 3. Ceremonial Pipe and Tobacco

In Mr. Furr's 2016 grievance, he requested the use of a ceremonial pipe and

---

and, therefore, has limited applicability. In the Fifth Circuit to demonstrate a substantial burden, a plaintiff must show he or she is pressured to significantly modify his or her religious behavior or significantly violate his or her beliefs. *Adkins*, 393 F.3d at 570.

12

tobacco as part of his religious observations. (#29-2) Defendant Watson denied the grievance because the possession of a pipe and tobacco violate ADC policy and Arkansas law. (#29-2)

Under Administrative Directive 15-25 ("AD 15-25"), inmates are prohibited from using or possessing tobacco products within the fence of any ADC facility. (#29-7) Defendant Watson explains in his declaration that ceremonial pipes are not the type of artifact that an inmate would be allowed to keep in his possession because they could be used as a weapon and pose a threat to security. (#29-4, p.5)

Mr. Furr, however, is not seeking to possess a ceremonial pipe or tobacco. Rather, he wants an advisor who would have control and possession of those items to be used during a ceremony.[3] (#29-24, p.50)

According to Wendy Kelley, Director of the ADC, Mr. Furr can use a ceremonial pipe that contains an herbal mixture of one percent tobacco once a "qualified, free-world, Native American Religious advisor" is located. (#39, p.8) Mr. Furr does not object to the herbal mixture of one percent tobacco; rather, he argues the free-world advisor requirement is not the least restrictive because other religions allow inmate-led services. (#40) Mr. Furr concedes that a qualified advisor must lead the ceremonies; however, he now argues that this advisor could be an inmate and he should not be restricted to a free-

---

[3] It is unclear how an inmate who qualified as an advisor could possess or control such items.

13

world advisor. (#40)

The ADC Defendants have not explained whether they would accept a properly trained inmate as an advisor. Even so, as set out above, Mr. Furr has not identified an inmate who is qualified to be an advisor. Accordingly, the issue of whether the requirement that the advisor be a free-world person is not currently before the Court. The question is whether the requirement that Mr. Furr have a properly trained advisor present to use a ceremonial pipe and an herbal mixture with one percent tobacco reasonably related to a legitimate penological interest.

The ADC has a compelling interest in promoting safety and maintaining security within the prison walls. See *Fowler v. Crawford*, 534 F.3d 931, 939 (8th Cir. 2008)("[a] prison's interest in order and security is always compelling"). Defendant Watson explained in his declaration that, "[t]he introduction of tobacco into the penitentiary creates legitimate security concerns due to, not only the health concerns, but all the use of tobacco as contraband, currency, and use of cigarettes as a mean of distributing an extremely dangerous and deadly drug, K-2 . . . ." (#29-5)

Limiting tobacco use to a one percent mixture in religious ceremonies with an advisor has a valid connection to the ADC's interest in promoting safety, health, and maintaining security. Mr. Furr has alternative means of practicing his religion, which include: the ability to purchase and receive religious items; reading of religious text and other religious literature; prayer outside at yard-call; and the ability to grow his hair and

14

beard for religious reasons. Allowing ceremonial pipe access and tobacco use without an advisor would create obvious health and safety hazards for staff and other inmates. The ADC's alternative to a total ban on tobacco—that is, allowing the use of a ceremonial pipe and an herbal mixture that is one percent tobacco with an advisor present, allows inmates to practice Native American religion at a *de minimis* risk to health, safety, and security concerns.

The Defendants have not violated Mr. Furr's First Amendment rights in requiring an advisor to be present during the use of a ceremonial pipe and limiting the tobacco in the pipe to one percent. Under RLUIPA, the Eighth Circuit has held that a complete ban on tobacco is not the least restrictive means of furthering a prison's interest in order and security. *Native American Council of Tribes v. Weber*, 750 F.3d 742 (8th Cir. 2014). Here, the Defendants have offered an alternative to a total ban on tobacco – they will allow the use of one-percent tobacco with an herbal mixture if an advisor is present. Because having an advisor for this function is a requirement of the Native American religion itself, Mr. Furr has no religious need to possess these items without an advisor present.

Mr. Furr does not object to the herbal mixture with one-percent tobacco. And even if he did, the Eighth Circuit has found that a penitentiary's tobacco restriction does not substantially burden an inmate's religious exercise in violation of RLUIPA. *Id* at 750. (citing to *Runningbird v. Weber*, 198 Fed.Appx. 576 (2006)). The Defendants'

requirement of an advisor in order to use a ceremonial pipe with an herbal mixture of one-percent tobacco is the least restrictive alternative and does not violate RLUIPA.

Likewise, there has been no violation of the Equal Protection Clause. Any argument that Mr. Furr makes regarding the fact that other religions can use inmates to lead services is not properly before this Court because he has not identified any available and willing inmate who could serve as an advisor. Mr. Furr has been unable to show there is a similarly situated group that is receiving different, more favorable treatment. He has not demonstrated a Fourteenth Amendment violation.

Accordingly, Mr. Furr's claims that the ADC's restriction on his ability to have a ceremonial pipe and one-percent tobacco fail to state a claim under the First Amendment, RLUIPA, or the Fourteenth Amendment. The Defendants are entitled to qualified immunity on this issue.

### 4. Sweat Lodge

Mr. Furr requests the use of a sweat lodge that is properly approved by his Native American religion.[4] (#29-24, p.44) Typically, a sweat lodge must be outside, completely dark on the inside, and built with cypress branches and canvas or blankets. (#29-24, p.44) Mr. Furr offers that he will accept any construction the ADC allows, so long as it is approved by his religion. (#29-24, p.44) Before the sweat lodge ritual commences, hot

---

[4] Mr. Furr began asking for a sweat lodge in 2016. (#29-24, p.39) The ADC has denied his requests. (#29-2)

lava rocks are heated outside by fire and are brought inside the sweat lodge when hot. (#29-24, p. 46-47) Only a properly trained individual can handle the lava rocks. (#29-24, p. 46-47)

Inside the sweat lodge, participants pray to the Great Spirit, while water is poured over the hot lava rocks, which produces heat and steam. (#29-24, p.18, 45-46) Mr. Furr acknowledges that he can pray in other places, but explains that he must be in a sweat lodge to receive the proper protection and receive a proper response to his prayers. (#29-24, p.20-21) Therefore, according to Mr. Furr, he needs a sweat lodge to properly practice his religion. (#29-24, p.17)

Defendants argue that a sweat lodge poses a threat to the safety and security of inmates and prisoners; therefore, they are prohibited, even if Mr. Furr had an available advisor. (#29-4, #29-5) Mr. Furr has indicated that he would be willing to compromise with the ADC in any way possible regarding the sweat lodge to accommodate some of the ADC's concerns, so long as an advisor approved the compromises. (#29-24, p.72)

Deciding whether or not the ADC's complete ban on sweat lodges violates the Constitution, RLUIPA, or the Fourteenth Amendment is premature and advisory because here, as noted above, there are currently no advisors—free-world or inmate—who can and will agree to serve as an advisor. Because there is no advisor, there is no way to know whether the advisor could offer alternatives to the construction of the sweat lodge, the use of hot lava rocks, the darkness requirement, or any other health and safety

concerns the Defendants have regarding sweat lodges. The Court cannot decide whether there are available alternatives that would satisfy both ADC policy and the dictates of the Native American religion. Only if and when a willing and able advisor is located does the constitutionality and statutory validity of the ban come into question.

The question that is before the Court today is: Does requiring an advisor to be present in order to participate in a sweat lodge violate the Constitution or RLUIPA? Looking again to the *Turner* factors, the prison's requirements that an advisor be involved (to conduct the sweat lodge rite), who is trained in working with hot lava rocks, steam, and high temperatures, is for obvious reasons rationally related to the prison's interest in the health and safety of inmates and staff. As previously discussed, Mr. Furr has alternative means of practicing his religion.

Mr. Furr acknowledges, based on his understanding of the Native American religion, that he must have an advisor to participate in a sweat lodge ceremony. (#29-24, p.39) It is a requirement of the religion and not just a prison requirement that an advisor be present to operate the sweat lodge. Requiring an advisor to conduct a sweat lodge is not only reasonably related to legitimate penological interests, it is the least restrictive alternative available at the present.

Mr. Furr has not demonstrated that there are similarly situated individuals seeking accommodations resembling his sweat-lodge request. Accordingly, the requirement for an advisor to oversee a sweat lodge is not a condition that violates the First Amendment,

the Fourteenth Amendment, or RLUIPA, and Defendants are entitled to qualified immunity.

F.      Claims for Declaratory and Injunctive Relief

Because Mr. Furr has not demonstrated a violation of his constitutional rights or RLUIPA resulting from the ADC's failure to provide him an eagle feather, a headdress, an advisor, a ceremonial pipe and tobacco without an advisor, or a sweat lodge without an advisor, Mr. Furr is not entitled to any declaratory or injunctive relief and Defendants are entitled to summary judgment.

### III.    Conclusion:

The Court recommends that Defendants' motion for summary judgment (#29) should be GRANTED. Mr. Furr's claims should be DISMISSED, with prejudice.

IT IS SO ORDERED this 16th day of February, 2018.

_____
UNITED STATES MAGISTRATE JUDGE